711 P.2d 1244

**In re the Marriage of Bette J. BID-DULPH, Petitioner-Appellee,**

v.

**Herbert Kemp BIDDULPH III, Respondent-Appellant.**

**No. 1 CA–CIV 7036.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 12, 1985.

Knollmiller, Herrick, Brown & Arenofsky by John E. Herrick, Thomas N. Swift II, Tempe, for petitioner-appellee.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Phillip Weeks, Gary L. Birnbaum, Phoenix, for respondent-appellant.

## OPINION

GRANT, Judge.

This is an appeal from a decree of dissolution filed on December 29, 1983. At the time of the dissolution the petitioner-appellee, Bette J. Biddulph (wife) had been married to the respondent-appellant Herbert Kemp Biddulph III (husband) for 21 years. The wife was 41 years of age and in good health. She had not been employed during the marriage. The husband was 44, in good health, and a corporate executive. The parties had acquired a community estate having a value of nearly $5,000,000. The chief asset of the estate was the corporate stock in Biddulph Oldsmobile, the husband's employer.

The trial court, after many days' testimony and certain stipulations by the parties, assigned values to the significant community assets and allocated them except for the Biddulph Oldsmobile corporate stock. The court, after allocating those assets in kind and assigning community obligations totaling $65,000 between the parties, entered a finding that the husband would receive property having a value of $825,876 greater than the value of the property allocated to the wife. Accordingly, the husband was ordered to make an equalizing payment of one-half that sum ($412,938) to the wife as set forth in the terms of the decree.

In order to preserve the going concern value of Biddulph Oldsmobile, a redemption of corporate stock was ordered. The value of the corporate stock was found to be $2,540,000. The court awarded one-half of the stock to the husband. The corporation was ordered to redeem the remaining shares from the wife at a purchase price of $1,270,000 as set forth in the terms of the decree. Apparently realizing that the equalizing note from husband to wife and the corporate redemption would result in the imposition of a capital gains tax, the court entered a further order in connection with the tax liabilities resulting from the decree. That order is embodied in paragraph 14 of the decree and reads as follows:

IT IS ORDERED that both parties shall bear equally any tax liabilities

caused solely by virtue of the above orders relating to the division of property. The husband appeals raising two issues:

(1) Does the dissolution decree result in an inequitable division of the community assets and liabilities; (2) did the trial court err in failing to consider the potential tax liability of husband in dividing the community assets and liabilities.

## EQUITABLE DIVISION AND TAX LIABILITY

A.R.S. § 25–318(A) (1982) imposes a duty on the court to divide jointly-held property equitably though not necessarily in kind. It is well established in Arizona that an "equitable" division of property is generally an "equal" division. *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976); *Britz v. Britz*, 95 Ariz. 247, 389 P.2d 123 (1964). Basically, the husband is arguing that the tax consequences of the division of property render the division inequitable.

The husband states that in accordance with the rule announced in *In re the Marriage of Goldstein*, 120 Ariz. 23, 583 P.2d 1343 (1978) he did not request that the court reduce the fair market value of the assets awarded to him to reflect the tax consequences of converting those assets to cash. However, he did suggest that the tax consequences be considered in determining whether a proposed division of assets and liabilities would be equitable. In *Goldstein*, the supreme court held that in determining the value of a professional medical corporation, the value of the corporation's accounts receivable and pension and profit sharing plans should not be reduced because of tax consequences which might arise in the future upon payment of receivables or distributions of the pension funds. The court believed it would be too speculative to compute the amount of any such future taxes unless there were proof that a taxable event would occur upon dividing the community property; therefore "before tax" value should be used.

The husband argues that paragraph 14 of the decree penalizes him solely because he happens to be the spouse to whom the court awarded the corporate stock to preserve the full value of the community property and to benefit both parties because of husband's close association with the company. He claims that he will ultimately receive at least $250,000 less than the wife because he was the party awarded the corporate stock. The effect of the provision, according to the husband, is to require that he pay one-half of the taxes incurred by the wife upon conversion of her corporate stock into cash and *all* of the taxes incurred should he seek to convert to cash all, or any part, of the assets awarded to him.

As an illustration, the husband claims that by paying half of the wife's tax liability on the redemption and upon sale of his own corporate stock, he will receive only $1,018,000 due to the tax allocation of paragraph 14, while the wife will receive $1,144,000.[1]

Therefore, the husband argues that paragraph 14 of the decree is, in effect, unfair, inequitable and unsupported by evidence because of the $252,000 disparity between the cash equivalent value of the assets and liabilities awarded to wife and those awarded to husband. Husband admits that in accordance with *Goldstein* the trial court correctly placed a "before tax" valuation on the assets awarded to him. No attempt

1. When petitioner's stock is redeemed, she will realize $1,144,000. Half of her tax liability will be paid by respondent since this liability arises out of the court's "orders relating to the division of property":

| | |
|---|---|
| Redemption Price | $1,270,000.00 |
| Tax Basis | (10,000.00) |
| Taxable Gain | $1,260,000.00 |
| Tax (at 20%) | $ (252,000.00) |
| Tax to be Paid by Respondent | 126,000.00 |
| Net Gain | $1,134,000.00 |
| Return of Capital (Not Taxable) | 10,000.00 |
| Cash Received | $1,144,000.00 |

was made by the trial court to consider the fact that when these assets were sold by husband he would have substantial capital gains tax to pay on such a sale. If the same requirement were applied to the wife, the husband contends, there would be no inequity. Husband claims that after the tax sharing provisions of paragraph 14 are applied, however, the wife receives property awarded to the husband.

The wife's position is that she will be taxed because of the structure of the decree and, absent paragraph 14, that tax would reduce the otherwise equal share of the community assets and liabilities apportioned to her. She argues that only the immediate tax consequences resulting from the decree should be considered and that tax consequences arising from the future disposition of an asset should not. She claims that the husband's future tax liability is contingent and speculative and that the tax which the court ordered the parties to bear equally is nothing more than the cost of dividing the community estate. We agree.

The supreme court has determined in *Goldstein* that only the tax consequences occurring in connection with the division of community property are those tax consequences which ought to be accounted for by the trial court in the decree. The expenses of selling the family home, for instance, have long been recognized as expenses to be borne equally by the parties. *See, e.g., Luna v. Luna,* 125 Ariz. 120, 608 P.2d 57 (App.1980).

Although there are a number of cases in Arizona requiring that a husband either purchase or redeem the wife's stock interest in the family business, these cases do not deal with the issue of whether the husband is responsible for paying any part of the tax liability incurred when the wife's stock is sold or redeemed. *See, e.g., Spector v. Spector,* 94 Ariz. 175, 382 P.2d 659

(1963); *McCune v. McCune,* 120 Ariz. 402, 586 P.2d 651 (App.1978). The husband acknowledges that the *Goldstein* decision holds that community property should be divided equally without considering the future speculative tax consequences of converting assets to cash. He relies on *dictum* in the case of *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975) for the proposition that tax liabilities must be considered in determining whether the proposed division is "equitable." We do not find the case persuasive as the issue in *Stern* involved the value of a particular asset and not whether the division of property was equitable.

> This court has previously noted that: [T]he only inherent limitation on the power of the trial court to apportion community property is that the division, in the final analysis, must result in a substantially equal distribution which neither rewards nor punishes either party. [Citation omitted.]

*Lee v. Lee,* 133 Ariz. 118, 121, 649 P.2d 997, 1000 (App.1982). We cannot say that paragraph 14 of this decree rewards or punishes either party and therefore we cannot say the trial court improperly exercised its broad discretionary powers. Costs which necessarily result from dividing the community estate in an otherwise equal manner should be borne equally by the parties. However, the spouse having ownership and control over an item of property should bear the risks associated with its future disposition. The tax consequences of the husband's future activity regarding the stock are completely speculative. *See Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981). He may never sell the stock; he may donate it to charity; he may place it in trust for another. Furthermore, the husband presented no evidence to the trial court concerning his potential tax liability. He cannot now claim the fault lies with the

---

The husband claims that the inequity of this situation is highlighted when he summarizes the final position of the parties after conversion of their corporate shares into cash via either redemption or sale:

|  | Petitioner | Respondent |
|---|---|---|
| Asset Value Per Decree (Redemption or Sales Price) | $1,270,000.00 | $1,270,000.00 |
| Tax Paid on Redemption of Petitioner's Stock | $ (126,000.00) | $ (126,000.00) |
| Tax Paid on Redemption or Sale of Respondent's Stock | .(0) | (252,000.00) |
|  | $1,144,000.00 | $892,000.00 |

trial court. *Reed v. Reed,* 82 Ariz. 168, 309 P.2d 790 (1957). Additionally we affirm because the husband failed to provide this court with the entire transcript on appeal even though his argument is essentially an attack on the sufficiency of the evidence. Rule 11, Arizona Rules of Civil Appellate Procedure. We must therefore presume the evidence supports the actions of the trial court, *In re Estate of Mustonen,* 130 Ariz. 283, 635 P.2d 876 (App.1981); *Hunt v. Hunt,* 22 Ariz.App. 554, 529 P.2d 708 (1975).

The wife has requested attorney's fees pursuant to A.R.S. § 25-324. After considering the financial resources of both parties, in the exercise of our discretion we order the parties to bear their own expenses on appeal. Therefore the wife's motion for attorney's fees is denied.

The judgment is affirmed.

MEYERSON, P.J., and HAIRE, J., concur.