731 P.2d 604

**In re the Marriage of Leonard E. SAMPLE, Petitioner-Appellant, Cross Appellee,**

v.

**Alice J. SAMPLE, Respondent-Appellee, Cross Appellant.**

**No. 1 CA–CIV 8056.**

Court of Appeals of Arizona, Division 1, Department D.

July 29, 1986.

Lewis and Roca by Jeremy E. Butler, John P. Frank, Joseph S. Jackson, Janet Napolitano, Phoenix, for petitioner-appellant, cross appellee.

Friedl & Richter by William J. Friedl, Phoenix, for respondent-appellee, cross appellant.

GRANT, Judge.

The primary issue for us to determine in this dissolution case is whether the trial court, in dividing rights to community property on remand from an appellate court, abused its discretion when it valued the property as of a date other than the date of the original divorce decree. The issue is one of first impression.

The pertinent facts are substantially uncontroverted. On April 29, 1980, Leonard E. Sample (husband) obtained a judgment of dissolution of his marriage to his wife of thirty-four years, Alice J. Sample (wife). The judgment also awarded 72,922 shares of MEI corporate stock (the stock) to the husband as his separate property. Wife appealed this aspect of the decree.

During the pendency of wife's appeal, the following transactions with respect to the stock occurred. On November 25, 1982, husband received an additional 72,922 shares of the stock as a result of a two-for-one stock split. In December, 1982, husband transferred one 72,922–share block to Securance Enterprises, Inc., a company formed during the pendency of the appeal and wholly owned by husband. Husband retained the other 72,922 shares personally. On January 13, 1983, husband, on behalf of Securance Enterprises, Inc., sold the stock held by Securance Enterprises, Inc., to a Panamanian corporation in exchange for an installment note.[1] On the same date husband also sold the shares he personally held (except for 5,000 shares subject to a pledge in favor of Valley National Bank) in exchange for an installment note from a second Panamanian corporation.

On February 24, 1983, this court in *Sample v. Sample*, 135 Ariz. 599, 663 P.2d 591 (App.1983), held that the 1980 amendment to A.R.S. § 25–318, although not in effect at the time of the divorce proceedings, was to be applied on appeal.[2] Accordingly, this court reversed that portion of the original decree which held that the 72,922 shares of the MEI stock were husband's separate

---

1. Wife suggests that this sale was not actually ratified until after this court's resolution of wife's appeal. While we acknowledge the factual dispute, we find it immaterial to the resolution of this case.

2. Laws 1980, ch. 113, § 7 amended A.R.S. § 25–318(A) to make retroactive the provision that property acquired by either spouse outside the state would be deemed community property if said property would have been community property if acquired within the state. Husband obtained stock options in Nebraska during the 1960's which resulted in the acquisition of MEI corporate stock.

property, and mandated that on remand the shares be treated as community property.

On remand, the trial court awarded wife a ½ interest in the proceeds of the two installment notes that husband and Securance Enterprises, Inc. received in exchange for the stock sales. The trial court also awarded wife ½ of the stock dividends received subsequent to the original decree together with interest from that date. With respect to the 5,000 shares still owned by husband, the trial court ordered husband to either assign ½ of the shares to wife or to pay her ½ of the fair market value of the stock (as of the date of the trial court's order). The trial court found that husband had negotiated the stock transactions knowing that the stock was the subject of an appeal, and thus required husband to guarantee the installment payments still due under the notes.

Husband appeals and wife cross-appeals from these rulings. Both husband and wife primarily challenge the trial court's choice of valuation date regarding the MEI stock. Husband's appeal also raises the following issues: a) whether the trial court erred in awarding wife an interest in the installment note held by Securance Enterprises, Inc., which was not a party to the proceedings; b) whether the trial court erred in requiring husband to guarantee payments under the installment notes; and c) whether the trial court erred in failing to offset spousal maintenance payments (made during the pendency of the appeal) against the interest on the dividends awarded to wife on remand.

### PROPERTY
### DIVISION—VALUATION DATE

Central to this appeal is the fact that the stock significantly appreciated in value between the date of the divorce decree and the remand proceedings. At the time of

the divorce trial the stock was valued at approximately $920,000. At the time of the hearing on remand, which was after the two-for-one stock split and an increase in value per share from $12.62 to $37.00, the stock had a value of approximately $5,396,-000. The value on January 13, 1983, the date on which husband allegedly sold the stock, was $28.50 per share for a total value of approximately $4,156,000. The two Panamanian notes are for $2,040,-932.25 and $1,935,777 respectively with interest at 9% to pay out $100,000 and $96,-788.85 per year over a twenty-year period.

The husband argues that the stock should be valued as of April 29, 1980, the date of the original dissolution decree. The trial court, however, in awarding wife a ½ interest in each installment note obviously valued the stock as of a date during the pendency of the appeal to this court. Moreover, to the extent the trial court awarded wife an interest in the shares still held by husband, it chose yet a later valuation date.

■ Our analysis of the valuation issue begins by determining the obligations of the trial court on remand. It is undisputed that this court's reversal of portions of the original decree did not disturb the divorce judgment. Our mandate did, nevertheless, invalidate the original property judgment so that no final property judgment was entered. *Dunbar v. Dunbar*, 109 Ariz. 395, 510 P.2d 41 (1973). *See also Sample v. Sample*, 135 Ariz. at 601–02, 663 P.2d at 593–94 (since A.R.S. § 25–318 was effective on appeal no final property judgment had been entered). Accordingly, the trial court was required to divide community interests in the stock shares pursuant to A.R.S. § 25–318(A).[3] *Dunbar*, 109 Ariz. at 395, 510 P.2d at 41. We believe that the trial court's choice of valuation date was legally

---

**3.** § 25–318(A) reads in part:

In a proceeding for a dissolution of the marriage, or for separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which previously lacked jurisdiction over the absent spouse or previously lacked jurisdiction to dispose of the property, the court shall assign each spouse's sole and separate property to such spouse. It shall also divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct. . . .

correct under A.R.S. § 25–318(A). There was no abuse of discretion as that phrase is defined by *City of Phoenix v. Geyler,* 144 Ariz. 323, 697 P.2d 1073 (1985).

It has long been recognized that under A.R.S. § 25–318(A) our trial courts are vested with broad discretion in determining the scope of property awards in divorce actions. *In re Marriage of Berger,* 140 Ariz. 156, 680 P.2d 1217 (App.1983); *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (App.1977). The only limitation to the trial court's discretion, in fact, is that the division of community assets results in substantial equality. *Hatch v. Hatch,* 113 Ariz. 130, 547 P.2d 1044 (1976); *Miller v. Miller,* 140 Ariz. 520, 683 P.2d 319 (App. 1984); *Lee v. Lee,* 133 Ariz. 118, 649 P.2d 997 (App.1982). Because the equitableness of a given distribution is the very touchstone of a proper apportionment, *Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App. 1977), we believe that a trial court must be allowed to utilize alternative valuation dates. Only in this fashion can our courts make truly equitable awards as dictated by A.R.S. § 25–318(A). Indeed, it would contravene the very purpose of A.R.S. § 25–318(A) for this court to develop a general valuation rule, let alone the valuation at dissolution formula proposed by husband.[4] We therefore agree with the Ohio Supreme Court when it stated in *Berish v. Berish,* 69 Ohio St.2d 318, 432 N.E.2d 183 (1982), that the choice of a valuation date should be "dictated by largely pragmatic considerations," and that it is "the equitableness of the result that must stand the test of fairness on review." 69 Ohio St.2d at 319–20, 432 N.E.2d at 184–85.

■ Applying these standards to the case before us, this court finds no abuse of discretion. The trial court traced the stock to award the wife a ½ interest in each installment note and thereby redistributed to the wife the benefits received by the husband pursuant to an erroneous judgment. The court, in effect, simply returned to the wife "that which was already hers." *Cockrill v. Cockrill,* 139 Ariz. 72, 75, 676 P.2d 1130, 1133 (App.1983) (Grant, J., concurring in part, dissenting in part).

■ Husband recognizes that Arizona case law has yet to squarely address the valuation question posed here. Husband nevertheless argues that precedent compels the adoption of a valuation at dissolution formula. In support of his position husband relies on two retirement benefits cases: *Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (1979) and *Warren v. Warren,* 2 Ariz.App. 206, 407 P.2d 395 (1965). We find these cases inapposite.

In *Tester,* 123 Ariz. at 45, 597 P.2d at 198, this court found that the record before it failed to support the trial court's $5,000 award to the wife as her share of the husband's retirement benefits. In remanding, we directed the trial court to value the community interest as of the date of the dissolution. *Id.* Similarly, in *Warren,* 2 Ariz.App. at 209, 407 P.2d at 398, we found the trial court's disposition of the husband's retirement benefits erroneous, and likewise ordered the trial court to value the wife's interest as of the date of dissolution.

The case before us is easily distinguishable from those two cases where the retirement benefit plans increased in value as a result of the husband's separate post-dissolution contributions. Here, on the other hand, we find that the evidence reasonably supports but one inference: the stock appreciated solely from market forces. Further, we find husband's reliance on the retirement benefits cases to be generally unrealistic and strained. The valuation issues in those cases are completely different and more complex because the right to the property is not presently enjoyed but will only become available, if at all, prospectively.

■ In sum, we hold that A.R.S. § 25–318(A) provides that the selection of a valuation date rests within the wide discretion

---

**4.** For a discussion of the problems inherent in a statutorily fixed valuation date *see Green v.* *Green,* 64 Md.App. 122, 494 A.2d 721 (1985).

of the trial court and will be tested on review by the fairness of the result. Upon this record, we find no abuse of discretion.

### OTHER ISSUES

We now come to husband's second argument. Husband maintains that because Securance Enterprises, Inc. was not joined as a party and because the trial court did not find that Securance Enterprises, Inc. is the alter-ego of husband, the trial court exceeded its authority by awarding wife an interest in the note held by Securance Enterprises, Inc. We do not agree.

■ In this case, it is evident that Securance Enterprises, Inc. is the one-man corporation of husband. Moreover, we think that husband's jurisdiction argument belies, in the very least, an identity of interest between husband and Securance Enterprises, Inc. Securance made no attempt to set aside the judgment as to it; nor did it separately appeal the judgment. Although if reasonably supported by the record we could imply a trial court finding of alter-ego, *see, Arizona Feeds v. A & R Argo, Inc.*, 136 Ariz. 420, 666 P.2d 520 (App. 1983); *Coronado Co., Inc. v. Jacome's Dept. Store, Inc.*, 129 Ariz. 137, 629 P.2d 553 (App.1981), we need not reach that far. The absence of an alter-ego finding and the failure to join Securance in no way precludes the trial court's order and is entirely consistent with prior case law. *See Biddulph v. Biddulph*, 147 Ariz. 571, 711 P.2d 1244 (App.1985) (corporation which was husband's employer was ordered to redeem shares of wife's stock). The trial court would have had the authority to join Securance had it truly been a separate entity. A.R.S. § 25–314(D).

Husband next challenges the trial court's order which requires him to personally guarantee payments of the amounts due the wife under the two installment notes. Husband argues that the order is improper because he breached no duty in exchanging the stock for the notes. In this context, husband refers to the trial court's finding that the stock transactions were not in violation of any court order, or in fraud of the community, or done with the intent to waste community assets. Husband also claims that wife's failure to file a supersedeas bond or stay order during the pendency of the first appeal excuses whatever action he took with respect to the stock. We do not accept these contentions.

■ The trial court based its order requiring payment upon its finding that husband negotiated the stock transactions knowing that the stock was the subject of an appeal. It is our belief that husband's knowledge of wife's community property claim constitutes justification for the trial court's order. We reach this result by an analysis of A.R.S. § 25–315(A). We also hold that pursuant to A.R.S. § 25–318(A) the trial court was authorized to require payment.

■ A.R.S. § 25–315(A)(1)(a) allows trial courts to issue preliminary injunctions in divorce actions to prohibit the parties from "transferring, encumbering, concealing or otherwise disposing of joint, common or community property of the parties except in the usual course of business or for the necessities of life, without the written consent of the parties or the permission of the court." *See Lonergan v. Strom*, 145 Ariz. 195, 700 P.2d 893 (App.1985). In this case, the trial court in 1980 issued to both husband and wife a preliminary injunction pursuant to A.R.S. § 25–315(A). Because the stock was not deemed to be community property until after husband sold it, even assuming that the injunction remained in effect throughout the pendency of wife's appeal and the property division order on remand, no technical violation of the injunction occurred. In our view, however, the absence of a violation of A.R.S. § 25–315(A) did not relieve husband of any responsibility towards wife with regard to his stock dealings during the pendency of the appeal.

This court has repeatedly held that the purpose of an injunction issued under the authority of A.R.S. § 25–315(A) is to prohibit actions by the parties that would result in dissipation of the marital property

or place it beyond the reach of the court. *Lonergan v. Strom*, 145 Ariz. at 198–99; 700 P.2d at 896–97; *Saxon v. Riddel*, 16 Ariz.App. 325, 328, 493 P.2d 127, 130 (1972). We think that husband's sale of the stock to two Panamanian corporations, following notice of wife's claim, evidences a deliberate attempt to prevent the trial court from allocating the stock. To sanction husband's actions, then, would be in direct contravention of the trial court's intent in issuing the preliminary injunction and contrary to the legislative intent evidenced by A.R.S. § 25–315(A).

Although the husband was not required to refrain from any dealings with respect to the stock, he was required to refrain from putting the property at risk. While the value of the stock did rise during the pendency of the appeal, the husband's sale of the stock to two Panamanian corporations was highly suspect. At best it placed the property at risk; at worst it was an effort to deprive wife of her share or to remove it beyond the court's jurisdiction.

■ It is our opinion that the trial court properly required guaranteed payments because husband's negotiation of the stock was improper in two respects: it negated the intent of the trial court in issuing a preliminary injunction, and it placed the property at risk. A dissolution proceeding is a statutory action and the trial court only has such jurisdiction as given by statute. *Weaver v. Weaver*, 131 Ariz. 586, 643 P.2d 499 (1982); *Andrews v. Andrews*, 126 Ariz. 55, 612 P.2d 511 (App.1980). However, we find the statutory authority for the trial court's order in A.R.S. § 25–318(A), the hallmark of which is equitable apportionment. Because husband intentionally put wife at risk of losing that to which she is entitled, and because payment of wife's share in the notes depends on the actions of Panamanian corporations, her fair share properly includes guaranteed payments from husband.

■ Before turning to husband's last argument we address one more point. Husband suggests that whatever action he took regarding the shares following the trial court's original action is excused by wife's failure to obtain a supersedeas bond or stay order. We disagree. Husband was a party to wife's appeal and had full notice of her claim to the stock. Moreover, wife's choice to appeal without obtaining a supersedeas bond was her privilege. *See Sepo v. Case*, 25 Ariz.App. 176, 541 P.2d 1160 (1975); *Aye v. Fix*, — Mont. —, 626 P.2d 1259 (1981); *Mann v. Thompson*, 118 So.2d 112 (Fla.App.1960).

■ Finally, husband argues that the spousal maintenance payments he made during the pendency of this appeal should be offset against the trial court's award, on remand, of interest to the wife (on ½ of the stock dividends received).[5] Husband asserts that the purpose of the interest award was to put wife in the position she would have been in had no error occurred; if no error had occurred, wife would never have received spousal maintenance. Therefore, husband reasons that the trial court erroneously awarded wife with a windfall by refusing to offset the maintenance payments. We disagree.

Husband correctly points out that amounts paid under an erroneous decree may be reconsidered on remand. *Dunbar v. Dunbar*, 109 Ariz. at 396, 510 P.2d at 42. Nevertheless, the trial court's sole duty here was to divide the community property interests equitably pursuant to A.R.S. § 25–318(A). We have already determined that the trial court met this task.

### THE CROSS APPEAL

On her cross-appeal wife's primary contention, like husband's, is that the trial court erred in its choice of valuation date. Wife does not, however, suggest that her interest in the stock should be valued on the date of dissolution. Rather, wife argues that her interest should be valued as

---

**5.** Upon reconsideration, the trial court found that by reason of its order wife would have sufficient property to meet her needs. The trial court thus ruled that wife was no longer entitled to spousal maintenance.

of the date of the final property division order on remand. In view of the foregoing, we find wife's argument without merit.

The judgment of the trial court is affirmed.

BROOKS and MINKER, JJ., concur.

NOTE: The Honorable ALLEN G. MINKER of the Greenlee County Superior Court, State of Arizona, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. Art. VI, § 3.